ACCEPTED
15-25-00078-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
9/4/2025 7:28 AM
CHRISTOPHER A. PRINE
CLERK

No. 15-25-00078-CV

In the Court of Appeals for the
Fifteenth District of Texas at Austin

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
9/4/2025 7:28:09 AM
CHRISTOPHER A. PRINE
Clerk

Trident Homes, Inc. & Ryan Strickland,
*Appellants*,

v.

Ramesh Kainthla & Neetu Kainthla,
*Appellees.*

On Appeal from the 272nd District Court of Brazos County, Texas
Trial Court Cause No. 21-000379-CV-272

## Brief of Appellants

Chad Flores
Texas Bar No. 24059759
cf@chadflores.law
Flores Law PLLC
917 Franklin Street, Suite 600
Houston, Texas 77002
(713) 364-6640

Matthew D. Sharpe
Texas Bar No. 24067160
matt.sharpe@lonestarlawoffice.com
Sharpe Law, PC
416 Tarrow St
College Station, Texas 77840
(832) 416-1133

Mark Hellinger
Texas Bar. No. 09394975
mhellinger@hellingerlawfirm.com
The Hellinger Law Firm
12 Greenway Plaza, Suite 1100
Houston, TX 77046-1201
(713) 623-1152

Counsel for Appellants

## Identity of Parties and Counsel

Appellants                                      Trident Homes, Inc.
                                                Ryan Strickland

Appellants' Trial & Appellate Counsel          Matthew D. Sharpe
                                                matt.sharpe@lonestarlawoffice.com
                                                Sharpe Law, PC
                                                416 Tarrow St
                                                College Station, Texas 77840
                                                (832) 416-1133

                                                Mark Hellinger
                                                mhellinger@hellingerlawfirm.com
                                                The Hellinger Law Firm
                                                12 Greenway Plaza, Suite 1100
                                                Houston, TX 77046-1201
                                                (713) 623-1152

Appellants' Appellate Counsel                   Chad Flores
                                                cf@chadflores.law
                                                Flores Law PLLC
                                                917 Franklin Street, Suite 600
                                                Houston, Texas 77002
                                                (713) 364-6640

Appellees                                       Ramesh Kainthla
                                                Neetu Kainthla

Appellees' Trial & Appellate Counsel           J. Davis Watson
                                                dwatson@watsonlawyers.com
                                                Sean Hester
                                                shester@watsonlawyers.com
                                                Watson Law Firm
                                                1450 Copperfield Pkwy, Suite 300
                                                College Station, Texas 77845
                                                (979 703-4044

# Table of Contents

Identity of Parties and Counsel ..................................................................i

Table of Authorities .................................................................................iv

Statement of the Case ............................................................................... 1

Statement Regarding Oral Argument........................................................2

Issues Presented.........................................................................................3

Statement of Facts .....................................................................................4

I.     Plaintiffs hired Trident Homes to build a mansion. ........................ 4

II.    Lawsuit Follows; Most Claims Fail. ................................................. 7

     A.    The buyers got a ~$28k verdict against Trident Homes *and* Strickland.................................................................... 7

     B.    The district court entered judgment on the verdict plus huge fees.... 10

Summary of the Argument........................................................................ 12

Argument .................................................................................................. 14

I.    Plaintiffs' Claims: Ryan Strickland is not liable individually.........15

II.    Plaintiffs' Claims: The damage findings are erroneous............................. 21

III.   Trident Homes' counterclaim was conclusively proven........................... 26

     A.    The Kainthlas breached the contract................................. 27

     B.    The Kainthlas' breaches were not excused......................... 41

IV.   The fee award cannot stand. ........................................................ 45

     A.    The demand was unreasonable......................................... 46

     B.    The amount is excessive. ................................................. 49

     C.    Plaintiffs failed to segregate. ......................................... 53

Conclusion ................................................................................ 57

Certificate of Compliance ....................................................... 59

Certificate of Service................................................................ 59

# Table of Authorities

**Cases**

*Bartush-Schnitzius Foods Co. v. Cimco Refrigeration, Inc.*,
    518 S.W.3d 432 (Tex. 2017) .................................................................. 40, 56

*Brookshire Bros., Ltd. v. Smith*,
    176 S.W.3d 30 (Tex. App.—Houston [1st Dist.] 2004, pet.
denied)…………………… ....................................................................... 25

*Cain v. Bain*,
    709 S.W.2d 175 (Tex. 1986) (per curiam) ...................................................... 14

*City of Keller v. Wilson*,
    168 S.W.3d 802 (Tex. 2005) ........................................................ . 14, 21, 23

*Copeland v. Alsobrook*,
    3 S.W.3d 598 (Tex. App.—San Antonio 1999, pet. denied)...........................2

*Dall. Nat'l Ins. Co. v. De La Cruz*,
    470 S.W.3d 56 (Tex. 2015)........................................................................ 14

*Drummond v. WWW.URBAN.INC.*,
    508 S.W.3d 657 (Tex. App.—Houston [1st Dist.] 2016, no pet.) .......... 45, 49

*E-Learning LLC v. AT&T Corp.*,
    517 S.W.3d 849 (Tex. App.—San Antonio 2017, no pet.)............................17

*Intercontinental Group P'ship v. KB Home Lone Star L.P.*
    295 S.W.3d 650 (Tex. 2009) ........................................................ 45, 50, 51

*Kinsel v. Lindsey*,
    526 S.W.3d 411 (Tex. 2017) ..................................................................53–54

*Lloyd Walterscheid & Walterscheid Farms, LLC v. Walterscheid*,
    557 S.W.3d 245 (Tex. App.—Fort Worth 2018, no pet.)............................17

*Maritime Overseas Corp. v. Ellis*,
     971 S.W.2d 402 (Tex. 1998)......................................................................... 14

*Rohrmoos Venture v. UTSW DVA Healthcare, LLP*,
     578 S.W.3d 469 (Tex. 2019).................................................................*passim*

*Stewart Title Guar. Co. v. Sterling*,
     822 S.W.2d 1 (Tex. 1991)......................................................................54–55

*Tony Gullo Motors I, L.P. v. Chapa*,
     212 S.W.3d 299 (Tex. 2006) ....................................................................... 56

*Wayne v. A.V.A. Vending, Inc.*,
     52 S.W.3d 412 (Tex. App.—Corpus Christi-Edinburg 2001, pet.
     denied) ................................................................................................. 45–46

**Statutes**

Tex. Civ. Prac. & Rem. Code § 38.002 .............................................. 45–46

Tex. Prop. Code § 162.006 ...................................................................... 19

## Statement of the Case

*Nature of the Case*     This contract case is about the construction of a custom mansion. As construction neared completion, the owners (Ramesh and Neetu Kainthla) refused to pay builder fees owed to the builder (Trident Homes). After Trident Homes threatened legal action, the Kainthlas raced to the courthouse and filed this suit to posture themselves as the aggrieved plaintiffs. They also sued Ryan Strickland, an officer of Trident Homes, seeking to hold him personally liable despite the lack of privity of contract. CR 510-14.

*Course of Proceedings*     The homebuyers sued both Trident Homes and its individual officer, Strickland. CR 509. They alleged breach of contract and other claims no longer at issue. *Id.* Trident Homes counterclaimed for breach of contract, alleging that the Plaintiffs failed to pay substantial amounts owed. CR 88-94.

A jury trial covered all but attorney's fees, which were tried to the district court later. CR 1218-19.

*Trial Court*     Brazos County 272nd District Court | Hon. John Brick

*Disposition*     The homebuyers got a mixed verdict on the contract claim. The jury found breach of contract by Trident Homes *and* Strickland, CR 1038, and also found that plaintiffs had not breached, CR 1044. The jury awarded only $28,640.28 in damages. CR 1043.

The district court entered judgment on the contract claim against both Trident Homes *and* Strickland. CR 1217-1221. It awarded the Plaintiffs actual contract damages of $28,640.28 *plus* an astounding $300,000 in attorney's fees. CR 1219-20. Defendants appealed. CR 2000.

1

## Statement Regarding Oral Argument

This appeal does not require oral argument, though it might be useful for some evidentiary details. Key sufficiency issues—like whether the contract at issue was made with just the homebuilder vs. the homebuilder *and* its main officer—are easily resolved by Plaintiffs' own testimony. "Did you have a contract with Ryan Strickland personally, individually, to build this home? A. This home, no sir":

```
Q.    Seriously, you are claiming that you had
a construction contract with Ryan to build this home?  Is
that what you are claiming?
A.    No, that's not what I said.
Q.    Did you have a contract with Ryan Strickland
personally, individually, to build this home?
A.    This home, no, sir.
Q.    And, in fact, at the deposition, I asked you,
"So as far as you were aware --" well, hold on a second.
I asked you at your deposition, "You didn't have a
contract with Ryan Strickland individually, correct?
A.    Correct.
Q.    And you responded, "Correct"?
A.    Correct.
```

9 RR 54. Briefs alone can establish this ground for reversal, as well as the other decisive faults.

**Issues Presented**

I.       Plaintiffs' Claims — Liability: Issue I is whether legally sufficient evidence supports the individual defendant's liability for breach of contract. Because the answer is no—the record establishes that any agreement was with Trident Homes, Inc., not with Ryan Strickland individually—the judgment against Strickland should be reversed and rendered.

II.      Plaintiffs' Claims — Damages:  Issue II is whether the $28,640.28 in actual damages is supported by sufficient evidence. Because the answer is no—several components were either unsupported, duplicative, or based on post-project expenses unrelated to any breach—the damages award should be reversed or remitted.

III.     Defendants' Counterclaim: Issue III is whether the jury's finding that the Plaintiffs were excused from their breach is supported by sufficient evidence. Because the answer is no—the evidence conclusively shows that Plaintiffs failed to pay amounts due before any alleged breach by Trident Homes—the judgment should be reversed and judgment rendered in Trident Homes' favor on its counterclaim.

IV..    Attorney's Fees: Issue IV is whether the $233,769.83 fee award is legally or factually sustainable. Because the award is disproportionate to Plaintiffs' recovery, unsupported by competent evidence, unsegregated across claims, and barred by an excessive pre-suit demand, it should be reversed or reduced.

## Statement of Facts

### I.  Plaintiffs hired Trident Homes to build a mansion.

*Trident Homes: A High-End Custom Builder.*  Trident Homes, Inc. is a custom residential construction company focused on high-end custom homes. 5 RR 24; 7 RR 191. Ryan Strickland is the President of Trident Homes and its principal decisionmaker. *Id.* He formed Trident Homes as an upgrade from S&I Residential, a separate entity that focused on lower-end construction. 7 RR 192–93. Trident Homes was intended to serve as a luxury brand. *Id.*

*Neetu Kainthla Had Long Experience With Trident Homes.*  Neetu Kainthla had an extensive history with both entities, having worked as the listing agent on approximately 45–50 homes built by Trident Homes and S&I. 9 RR 39-40. Her prior course of dealings always involved contracts with the corporate entity—not Strickland personally. 9 RR 54; 5 RR 12. She personally drafted the sales contracts for many of those homes. 8 RR 205–06. It was also Neetu who initiated the custom build at issue in this case: a sprawling 8,000-square-foot residence designed to be the Kainthlas' "dream home." 8 RR 203; 9 RR 50.

*The Agreement: Cost-Plus with Trident Homes, Not Strickland.*  The construction agreement was an oral cost-plus 10% arrangement: the Kainthlas would reimburse actual costs and pay a builder fee of 10% on all project costs, including

labor, materials, equipment, and fixtures. 9 RR 50; CR 1039 (Jury Question 2). They paid Trident Homes a $30,000 advance at the outset of the project. 5 RR 95; CR 1040. Neetu testified that this was meant to be a simple business relationship grounded in long-standing trust. 8 RR 203. There was no written contract, but both parties agreed that the agreement was with Trident Homes. 9 RR 54. Neetu explicitly confirmed that she did not have a contract with Ryan Strickland personally. *Id.*

*Delays and Disruptions Caused by Plaintiffs*. Trident Homes managed the build over the course of nearly four years, with significant delays driven by Plaintiffs' failure to make timely selections. 7 RR 195–96, 203–204 (Strickland testimony describing selection delays of over a year on exterior items); 5 RR 97 (Impullitti testimony on delay impact); *see also* PX 115 (text messages reflecting delay in selecting roofing materials). Several trades, including electricians and cabinetmakers, were delayed or replaced due to the Kainthlas' indecision. 7 RR 197– 201; 8 RR 28–32. Neetu personally interfered with subcontractors—including threatening and attempting to directly negotiate terms—which led to further disruption. 8 RR 21–24.

*Trident Homes Managed and Funded the Work.* Despite this, Trident Homes continued to supervise and fund the project using the construction account it maintained. 7 RR 93-95 (Impullitti identifying account payments and invoice

management); 7 RR 100-104 (describing outstanding invoices submitted to Plaintiffs for reimbursement). Trident Homes' internal "Bill Tracker" recorded all costs and payment requests. *See* DX 22.

*The October 2020 Billing Dispute.* By October 2020, the project was nearing completion. Trident Homes submitted a billing packet totaling $95,021.38 on October 22, 2020, for completed work. *See also* DX 21, 22, 23; 7 RR 67–71 (Impulliti detailing the request). But instead of paying the full amount, the Kainthlas remitted only $58,558.46—leaving a shortfall of $36,462.92, including unpaid builder fees of $3,636.59. 7 RR 70–71; 7 RR 100-104.

*Plaintiffs Stop Paying and Shift Blame.* This refusal marked a turning point. Trident Homes continued submitting invoices—including a November 20, 2020 billing packet for $85,245.68—but the Kainthlas made no further payments. 5 RR 79–81. Ramesh Kainthla admitted that they refused to pay because of a refrigerator dispute and because they intended to complete the project without paying further builder fees. 6 RR 80–81; 7 RR 183–85.

*Plaintiffs Used Trident Homes' Work Without Paying.* After terminating Trident, the Kainthlas continued using the trades, schedules, and selections Trident

6

Homes had coordinated. *See also* PX 22[1] (post-termination purchases); 7 RR 106–07 (Impullitti confirming purchases ordered during Trident Homes' tenure). But they refused to pay Trident Homes either reimbursement or the 10% builder fee—despite using the exact materials and vendors Trident Homes had arranged. 5 RR 95–97; 6 RR 8–9; 7 RR 100-104.

## II. Lawsuit Follows; Most Claims Fail.

Plaintiffs are the homeowners (Kainthlas), who sued both Trident Homes, Inc., *and* its individual officer, Ryan Strickland. CR 7-19 (original petition); CR 509-525 (live petition). Defendants answered, CR 60-65, and counterclaimed for the shortfall and unpaid fees, CR 88-94. A jury trial occurred.

### A. The buyers got a ~$28k verdict against Trident Homes *and* Strickland.

The jury rendered a mixed verdict. CR 1034-1077. Plaintiffs had sued both Trident Homes and Strickland individually, asserting over twenty claims. CR 509–525. But at trial, they recovered only $28,640.28 on their breach-of-contract theory. CR 1043.

---

[1] DX22 also referred to Exhibit D3 to Impulliti's deposition – video of deposition shown at trial.

Question 1 addressed overall contract existence. CR 1038. The jury found that the Kainthlas had made a contract with both the building company Trident Homes *and separately* its individual officer Strickland:

**QUESTION NO. 1:**

Did the Kainthlas enter into an oral contract with any of the following to build their home on 3545 Kanati Cove?

Answer "Yes" or "No."

1. Trident Homes     Yes

2. S & I Residential     No

3. Ryan Strickland     Yes

CR 1038.

Question 2 addressed the existence of particular contract obligations. CR 1039-1040. Using eleven separate blanks, the jury found that the agreement included some but not all of the Kainthlas' alleged terms. CR 1039-1040.

Question 3 addressed the defendants' breach. CR 1042. The jury found that the Question 1 contracting parties (by reference, both Trident Homes and Strickland) breached some of Question 2's particular contract obligations. CR 1042.

Question 4 addressed damages. CR 1043. The jury found damages in five categories roughly tracking Question 2's particular contract obligations. CR 1043. The contract action's actual damages amounted to a grand total of just $28,640.28:

8

The amount of funds paid by the Kainthlas but not used in relation to the construction of their home or overhead related to the project.

Answer: 13,538.05

The amounts incurred by the Kainthlas because of Builder's failure to pay subcontractors and vendors.

Answer: 3,802.23

The amount to be credited towards the refrigerator.

Answer: 10,000.00

The amount of repairs caused by the Builder or its subcontractors and the builder fees associated with such repairs that the Kainthlas paid.

Answer: 1,300.00

Increased amounts paid by the Kaihthlas for electrical work caused by Builder or its subcontractors.

Answer: 0

CR 1043.

Question 5 turned the tables to ask whether the homebuyers (Kainthlas) had breached the Question 1/2 agreement. CR 1044. It asked "Did the Kainthlas fail to comply with the agreement?" and instructed that a "failure to comply by the Kainthlas is excused if the Builder previously failed to comply with a material obligation of the same agreement." CR 1044. The jury answered "No—By Excusal":

Answer "Yes" or "No."

Answer: No — By Excusal

9

CR 1044. Other questions addressed matters no longer at issue in the case. CR 1075.

In post-trial proceedings, the plaintiff homebuyers elected to proceed to judgment on their breach of contract cause of action. CR 1219. Attorney's fees were tried to the district court after the verdict. *See* CR 1219.

## B. The district court entered judgment on the verdict plus huge fees.

The district court entered judgment against both Trident Homes the company and Strickland individually, giving the Plaintiff homebuyers a modest $28,640.28 of actual damages *plus nearly ten times that amount in attorney's fees*. CR 1219-20. First, the district court entered judgment on the breach-of-contract action and assessed actual damages totaling just $28,640.28 plus interest:

> **IT IS THEREFORE ORDERED, ADJUDGED AND DECREED** that Plaintiffs, Ramesh Kainthla and Neetu Kainthla, shall have and recover judgment against Defendants, Trident Homes, Inc. and Ryan Strickland, jointly and severally, actual damages in the amount of $28,640.28 with an additional amount of $9,858.47 for pre-judgment interest at the rate of seven point seventy-five percent (7.75%) per annum from February 21, 2021 (date of filing lawsuit) through January 6, 2025 with a per diem rate of $6.08 for every day thereafter through judgment;

CR 1219. Then the judgment awarded nearly $300,000 in attorney's fees, representing $233,769.83 for trial plus another ~$70,000 for appeal:

> **IT IS FURTHER ORDERED** that Plaintiffs Ramesh Kainthla and Neetu Kainthla shall have and recover reasonable and necessary attorney fees, jointly and severally, from Defendants, Trident Homes, Inc. and Ryan Strickland, as follows:

10

1. $233,769.83 in reasonable and necessary attorney's fees of the Watson Law Firm through entry of judgment;

2. In the event of appeal of this judgment in which Plaintiffs prevails:

   a. $34,625.00 as reasonable and necessary attorney fees for proceedings in the Court of Appeals;

   b. $12,000.00 as reasonable and necessary attorney fees for representation for the review stage of the Supreme Court of Texas;

   c. $12,000.00 as reasonable and necessary attorney fees for representations at the merits briefing stage of the Supreme Court of Texas; and

   d. $12,000.00 as reasonable and necessary attorney fees for representation through oral argument and the completion of proceeding in the Supreme Court of Texas.

CR 1219-20. It also held that Trident Homes take nothing on its counterclaims. CR 1220.

In this process, Defendants preserved all of their present appellate challenges. They timely filed a pre-judgment motion to disregard the verdict's adverse findings. CR 1009-1158; *see* CR 1161 (denied). They timely objected to the Plaintiffs' proposed judgment. CR 1163. They requested findings of fact and conclusions of law. CR 1266. And after the judgment was entered, they timely lodged motions for a new trial and motions to modify the judgment, CR 1269-1297; CR 1298-1360, that the court denied, CR 2049. Then they timely appealed. CR 2000.

## Summary of the Argument

This case began as a sprawling construction dispute involving dozens of claims and complex allegations ranging from fraud to trust fund violations. But after a full jury trial, only a narrow breach-of-contract claim survived—and even that yielded a modest award of $28,640.28. Yet the judgment imposes personal liability on an individual defendant with no privity, denies Trident Homes' counterclaim for unpaid builder fees that were conclusively proven, and awards Plaintiffs an outsized $233,769.83 in attorney's fees. Each of these results is unsupported by the record.

I.     No Contract with Strickland Individually.

The judgment against Ryan Strickland must be reversed and rendered. Plaintiffs introduced no evidence that Strickland personally contracted to build their home. On the contrary, Neetu Kainthla expressly admitted: "This home, no sir," when asked if she had a contract with Strickland individually. 9 RR 54. Her own testimony confirmed that all her prior dealings—including 45–50 transactions— were with Trident Homes, not Strickland. 9 RR 39–40; 8 RR 205–06.

II.    Plaintiffs' Damages Were Not Supported.

Plaintiffs' $28,640.28 damage award is largely unproven. The $13,538.05 for alleged misused funds came from a 2021 bank transfer months *after* Trident Homes left the project. 8 RR 144-149. The $3,802.23 "double payment" claim was

disproven by an admission that each item was paid only once. 7 RR 175–77. And the $1,300 roof repair was tied to damage discovered and fixed more than a year after Trident Homes' involvement ended. 8 RR 32–34. None of this should have been awarded.

## III. Trident Homes' Counterclaim Was Improperly Denied.

The jury excused the Kainthlas' nonpayment, but the record conclusively shows no prior material breach by Trident. Plaintiffs underpaid Trident Homes' October 22, 2020 billing by over $36,000, including earned builder fees. 5 RR 67–71; DX 21, 22, 23. The only alleged "breaches" by Trident Homes came *later*—after the Kainthlas had already defaulted. Under *Bartush-Schnitzius Foods Co. v. Cimco Refrigeration*, 518 S.W.3d 432, 437 (Tex. 2017), that sequence cannot justify excuse. The counterclaim was proven and should have been awarded.

## IV. The Attorney's Fee Award Is Legally Unsustainable.

The $233,769.83 fee award is excessive, unsegregated, and barred by Plaintiffs' unreasonable demand. Plaintiffs recovered just $28,640.28—2% to 11% of the $250,000–$1,000,000 they sought. CR 509–525; CR 1219. They did not segregate fees by claim, their own expert admitted he applied only a 5% reduction based on nothing more than his belief it was "fair." 12 RR 40–41, 61-62, 101-102.

13

Worse, Ramesh Kainthla conceded their $95,955.46 pre-suit demand "was not reasonable." 6 RR 80–81. The fee award must therefore be reduced or reversed.

## Argument

Appellants Trident Homes, Inc. & Ryan Strickland challenge four aspects of the district court's judgment. Three involve the legal and factual sufficiency of the evidence supporting the jury's findings on liability and damages (Issues I, II, and III), and the fourth challenges the district court's attorney's fee award (Issue IV), which was tried to the bench and rests on errors of law, evidentiary sufficiency, and discretion. Well-established standards of review apply.

In reviewing a challenge to the legal sufficiency of the evidence, the appellate court views the record in the light most favorable to the finding, crediting favorable evidence if a reasonable factfinder could and disregarding contrary evidence unless a reasonable factfinder could not. *E.g.*, *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). A legal sufficiency challenge must be sustained if the record reveals: (1) a complete absence of evidence of a vital fact; (2) a legal bar to giving weight to the only evidence offered on that fact; (3) no more than a scintilla of evidence; or (4) conclusive evidence to the contrary. *E.g.*, *Dall. Nat'l Ins. Co. v. De La Cruz*, 470 S.W.3d 56, 57 (Tex. 2015).

When a party challenges the factual sufficiency of a finding, the appellate court must examine all the evidence and determine whether the disputed finding is so against the great weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. *E.g.*, *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam). The court may not substitute its judgment for that of the factfinder, but it must correct verdicts that reflect bias, speculation, or failure of proof under the applicable burden. *E.g.*, *Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex. 1998).

When reviewing a trial court's attorney's fee award following a bench hearing, appellate courts apply a hybrid standard. Pure questions of law—such as entitlement to fees under Chapter 38 or the excessive-demand doctrine—are reviewed de novo. *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 484 (Tex. 2019). The amount of fees awarded is reviewed for abuse of discretion, but the factual basis for the award must still be supported by legally and factually sufficient evidence. *Id.* at 501–02.

## I. Plaintiffs' Claims: Ryan Strickland is not liable individually.

First and foremost, Appellant Ryan Strickland challenges the district court's decision to enter a judgment on the Plaintiffs' breach of contract claim against him. Plaintiffs' breach-of-contract claim was, by their own account, based on an

agreement with Trident Homes, Inc.—the corporate builder. There is no evidence that Strickland was a party to that contract in his individual capacity. On the contrary, the evidence at trial conclusively established that he was not.

The dispositive testimony came from Neetu Kainthla herself. When asked directly at trial whether she had a contract with Ryan Strickland personally, her answer was unequivocal: "This home, no sir." 9 RR 54.

```
    Q.   Seriously, you are claiming that you had
a construction contract with Ryan to build this home?  Is
that what you are claiming?
    A.   No, that's not what I said.
    Q.   Did you have a contract with Ryan Strickland
personally, individually, to build this home?
    A.   This home, no, sir.
    Q.   And, in fact, at the deposition, I asked you,
"So as far as you were aware --" well, hold on a second.
I asked you at your deposition, "You didn't have a
contract with Ryan Strickland individually, correct?
    A.   Correct.
    Q.   And you responded, "Correct"?
    A.   Correct.
```

9 RR 54.

That admission aligns with the entire course of dealing. Neetu had worked with Strickland on nearly 50 prior transactions, all through his corporate entities. 9 RR 39–40; 8 RR 205–06. She knew how his business was structured and had no reason to believe this project was any different.

Despite that, the jury found Strickland individually liable, and the district court entered judgment accordingly. That finding cannot stand.

A party cannot be held liable for breach of contract absent proof of privity, and here there is no evidence—none—that Strickland personally entered into or agreed to be bound by the alleged contract. *See E-Learning LLC v. AT&T Corp.*, 517 S.W.3d 849, 858 (Tex. App.—San Antonio 2017, no pet.). Nor is there any evidence of a "meeting of the minds" with Strickland in his individual capacity. *See Lloyd Walterscheid & Walterscheid Farms, LLC v. Walterscheid*, 557 S.W.3d 245, 258 (Tex. App.—Fort Worth 2018, no pet.) (listing elements of enforceable contract, including mutual assent and intent to be bound).

To be clear, Strickland had no burden to disprove his individual liability. But he did so anyway—using Plaintiffs' own testimony. The record is devoid of any evidence that Strickland personally obligated himself, that he accepted the benefits of the agreement in a personal capacity, or that the Kainthlas treated him as a party

separate from Trident Homes. Their pleadings, communications, and conduct all point to the corporate entity as the contracting party.

Indeed, the trial record leaves no doubt that the parties contracted with Trident Homes, not Ryan Strickland individually. Plaintiffs themselves confirmed this through both testimony and conduct. From beginning to end, the structure of the relationship, the payment flows, the project management, and the parties' own course of dealing consistently reflected a contract with the corporate builder—not with its individual officer.

Neetu Kainthla's extensive history with Strickland reinforces this conclusion. She had worked with him since 2008 as a real estate agent, first with S&I Residential and then with Trident Homes after its formation in 2014. 9 RR 39–40. Over the years, she sold between 45 and 50 homes built by those entities and personally drafted the contracts used in those transactions. 8 RR 205–06. Her testimony about those transactions confirms the routine structure: Strickland operated through his companies, and buyers contracted with the builder entity—not with Strickland personally.

That pattern held here. When asked why she hired Strickland's company to build her own home, Neetu described years of collaboration, familiarity, and trust. But at no point did she testify that Strickland personally agreed to build her house.

To the contrary, she admitted that she did not think of using another builder, not because of any individual agreement with Strickland, but because of her past success working with Trident. 8 RR 203. As she put it, "There was no doubt that Trident Homes would build this house." 7 RR 201.

And indeed, Trident Homes did. It was Trident Homes—not Strickland personally—that entered into agreements with subcontractors and suppliers. 8 RR 155. Trident Homes' staff—including its superintendent (Greg Eby), bookkeeper (Jason Impullitti), and Strickland himself acting in his corporate capacity—managed the project from start to finish. 5 RR 93–95; 6 RR 8–9; 7 RR 100-104. Trident Homes opened and controlled the construction account, as required by Texas Property Code § 162.006. All project payments flowed through that account or Trident Homes' operating account—not to Strickland personally. 7 RR 68-70; 7 RR 95-97; 5 RR 128-131. Builder fees were paid exclusively to Trident Homes. No builder fee was ever paid—or even offered—to Strickland. *Id.*

Other documentary evidence confirms the true contracting party. Trident Homes obtained the builder's risk insurance policy for the property. DX 22; 7 RR 28. Trident Homes' "Bill Tracker" logged all expenses and reimbursements. *Id.* And public-facing signs at the project site identified Trident Homes as the builder. 7 RR 201. The jury itself found that one of the contract's terms allowed Trident

19

Homes to market the home to future customers—something that would have made no sense if Trident Homes was not the builder. CR 1040 (Jury Question 2(10)).

Plaintiffs' attempts at trial to recast the agreement as personal to Strickland were unsupported, conclusory, and internally inconsistent. They offered no evidence that Strickland individually assumed contractual duties, received payments, or agreed to bind himself. Their vague statements that they "believed" they were contracting with Strickland are legally insufficient. Subjective belief, even if sincere, cannot override the objective evidence of who actually performed the work, received the payments, and operated the project. *See Copeland v. Alsobrook*, 3 S.W.3d 598, 605 (Tex. App.—San Antonio 1999, pet. denied) ("The terms [of an oral contract] must be expressed with sufficient certainty so that there will be no doubt as to what the parties intended.").

Plaintiffs knew they were dealing with Trident Homes and the evidence confirms that only Trident Homes undertook to perform. The district court erred by allowing a personal judgment against Strickland to stand. That judgment should be reversed and rendered.

## II.    Plaintiffs' Claims: The damage findings are erroneous.

Appellants next challenge the district court's decision to award Plaintiffs actual damages amounting to $28,640,28. CR 1219.  In this respect, the district court erred by accepting Question 5's first, second, and third damages findings ("$13,538.05" "$3,802.23" and "$1,300"), CR 1043, because all three of those findings lacked legally sufficient evidence.

For this reason, the district court instead of denying Strickland's post-trial motion making this point, CR 1284-88, should have granted it and rendered a judgment deleting those aspects of damages; or in the alternative, the court should have at least held that the jury's answer was against the great weight and preponderance of the evidence and ordered a new trial.

### A.    Insufficient evidence supported the "$13,538.05" finding.

First, the Court should reverse the $13,538.05 damages award contained in the jury's response to Question 5. CR 1043. Plaintiffs failed to offer legally or factually sufficient evidence tying that amount to any breach of contract by Trident Homes.

According to Plaintiffs, the $13,538.05 figure represents the remaining balance in the Prosperity Bank construction account as of November 30, 2020. *See* PX 90 (2020.11). But Plaintiffs never showed that this balance was misapplied or wrongfully

21

withheld. They offered no evidence that the funds were earmarked for any specific unpaid vendor, invoice, or project expense. Nor did they offer testimony that the use of those funds violated any express term of the parties' agreement.

To the contrary, the record establishes that the construction account balance was used to pay valid overhead expenses of the builder. Ryan Strickland testified that these funds were applied to actual overhead costs incurred in connection with the project. 7 RR 230–32. That testimony was not challenged or contradicted. Jason Impullitti confirmed that Trident Homes incurred significant fixed overhead— including staff, insurance, supervision, scheduling, and accounting—which was funded in part from the construction account. 7 RR 100–103. Even Plaintiffs' own construction expert, Victor Drozd, acknowledged that overhead is a legitimate and substantial component of any custom home project. 6 RR 222–23.

Plaintiffs presented no evidence to rebut this. And they failed to establish that Trident Homes' use of the funds breached any contractual obligation. Without that link, the jury's award cannot stand.

Because Plaintiffs failed to show that the $13,538.05 was wrongfully withheld or constituted damages caused by breach, the award is unsupported and must be reversed. Alternatively, it is against the great weight and preponderance of the evidence and must be remitted.

**B.    Insufficient evidence supported the "$3,802.23" finding.**

The Court should also reverse the $3,802.23 damages award reflected in the jury's answer to Question 5. *See* CR 1043. Plaintiffs presented no legally or factually sufficient evidence to support this award, which they misleadingly styled as compensation for "double payments." The record shows no such duplication occurred.

Plaintiffs' counsel introduced this amount during closing argument using a demonstrative slide—not tied to any admitted summary exhibit or witness testimony. But argument is not evidence, and the data underlying the $3,802.23 figure was never meaningfully established at trial. *See* 7 RR 175–77.

Even more fundamentally, the premise behind this category was false. Ramesh Kainthla himself testified that the payments at issue were made only once—by the Kainthlas—and not also paid by Trident Homes. *Id.* There was no testimony or documentary evidence showing that Trident Homes had already paid those invoices, or that any party received duplicate reimbursement. *Id.* Without proof of a duplicated transaction or resulting overpayment, there is no basis for the jury's finding.

Moreover, this category overlaps entirely with the $13,538.05 figure discussed above. That amount already purported to capture the entire balance remaining in the

construction account as of late November 2020. *See* PX 90-45 (aka PX90-2020.11); 8 RR 61-62. To award another $3,802.23 based on alleged mismanagement of the same funds—without any proof that it represents a distinct harm—results in double recovery.

In short, Plaintiffs failed to prove that the $3,802.23 was paid twice, wrongfully paid, or caused by any breach of contract. Because the jury's award rests on speculation and overlap, it is both legally and factually insufficient and must be reversed.

## C.    Insufficient evidence supported the "$1,300" finding.

The Court should also reverse the $1,300 damages award in the jury's response to Question 5. *See* CR 1043. That award appears to stem from a 2022 invoice issued by Quick Roofing for roof tile repairs—work performed well over a year after Trident Homes had left the project. Plaintiffs failed to present legally or factually sufficient evidence that this expense was either caused by Trident Homes or compensable under the contract.

The invoice in question was introduced as PX 70, and the related testimony confirmed that the work was performed in January 2022, long after Trident Homes ceased its role as builder. *See* 8 RR 33–34. Plaintiff Ramesh Kainthla admitted that Quick Roofing was contacted to address new cracking in tiles. *Id.* Photographs from

the repair show a large volume of tile replacements, including ridge tiles—suggesting substantial post-project damage, not minor punch-list issues. *Id.*

Yet Plaintiffs offered no expert testimony or other competent evidence to establish causation. To recover on a construction defect theory, Plaintiffs were required to show that (1) the defect existed at the time of project completion, and (2) the claimed damage was proximately caused by that defect. They failed on both elements. *See generally Brookshire Bros., Ltd. v. Smith*, 176 S.W.3d 30, 36 (Tex. App.—Houston [1st Dist.] 2004, pet. denied).

Strickland testified that any tiles cracked during construction were repaired by Quick Roofing before Trident Homes' departure. 7 RR 169; 8 RR 32. He further testified that he was unaware of any unresolved roof damage at the time the relationship ended in November 2020. 8 RR 31. The 2022 invoice related to newly reported damage, not any existing condition from the time of construction. *Id.*

Strickland also explained that the later cracking was most likely caused by individuals walking on the roof after Trident Homes' involvement had ended—at a time when the Kainthlas were serving as their own general contractor. 8 RR 32–34. Plaintiffs offered no testimony to rebut this, and no expert or roofer testified to the contrary. There was no attempt to trace the cracking back to defective workmanship

by Trident Homes or its subcontractors, and no evidence that Strickland—as an individual—played any role in the roof installation or repairs.

In short, Plaintiffs failed to prove (1) that the damage existed during Trident Homes' tenure, (2) that it was caused by Trident Homes or its agents, (3) that it was the result of any breach of contract or warranty, or (4) that it involved any act by Strickland personally. The $1,300 award therefore lacks both legal and factual support and must be reversed.

## III. Trident Homes' counterclaim was conclusively proven.

Appellants challenge the district court's decision to enter a take-nothing judgment on their counterclaim. *See* CR 1220. In this respect, the district court accepted the jury's answer to Question 5, which had asked "Did the Kainthlas fail to comply with the agreement?" and instructed that a "failure to comply by the Kainthlas is excused if the Builder previously failed to comply with a material obligation of the same agreement." CR 1044. To this the jury responded "No - By Excusal. *Id.* The district court's acceptance of that answer was error because Trident Homes' evidence conclusively established both (i) that the Kainthlas had failed to comply and (ii) that their failure was not excused.

26

For this reason, the district court instead of denying Strickland's post-trial motion making this point, CR 1269-73, should have granted it and rendered a judgment upholding the counterclaim. Or, in the alternative, the court should have at least held that the jury's answer was against the great weight and preponderance of the evidence and ordered a new trial.

## A.    The Kainthlas breached the contract.

Trident Homes presented clear, unrebutted evidence that the Kainthlas failed to pay builder fees to which Trident Homes was contractually entitled. The parties' agreement—confirmed by the jury in its answer to Question 2(2)—required the Kainthlas to pay Trident Homes a 10% builder fee on all project costs, including labor, materials, equipment, and fixtures. CR 1039. That structure was followed throughout the project. Builder fee payments were made directly to Trident Homes, never to Ryan Strickland personally. 5 RR128-131.

As of October 22, 2020, Trident Homes submitted a payment request in the amount of $95,021.38, which included a builder fee of $9,502.14. DX 21–23; 5 RR 67–71; 7 RR 100-104. On November 2, 2020, the Kainthlas remitted only $58,655.46 toward expenses and $5,865.55 toward the builder fee—leaving a shortfall of $36,365.92 in unpaid invoices and $3,636.59 in unpaid builder fees. *Id.*; 7 RR 183–85. The underlying invoices—covering work performed by vendors while Trident

27

Homes was still the builder—were never disputed and included the following:

| Date of Invoice | Vendor/Sub/Trade | Amount | Description |
|---|---|---|---|
| 8/17/2020 | Earth Stone aka Colours | $ 1,522.68 | |
| 10/22/2020 | Earth Stone aka Colours | $ 1,356.37 | |
| 10/21/2020 | Old Stone Marble & Granite | $18,714.04 | Granite |
| 10/22/2020 | Emser Tiles | $ 7,389.83 | Tiles |
| 10/16/2020 | Art's Fencing | $ 4,447.50 | Spiral Stairway |
| 10/16/2020 | Art's Fencing | $ 2,935.50 | Railing |
| **Amount Short** | | **$36,021.38** | |

*See also* DX 21–23; 5 RR 73–79.

Trident Homes' "bill tracker" (DX 22) marked paid invoices in yellow; those not highlighted were still unpaid. 5 RR 67; DX 20. Ramesh Kainthla himself acknowledged receiving the October 22 request. When challenged on the shortfall, Trident Homes emailed on November 6, 2020: "I don't think you understand, we have almost $100k in bills and $58k in payment. This difference is over $30k." DX 245.

On November 20, 2020, Trident Homes submitted a second billing packet for $85,245.68, which included both new invoices and amounts the Kainthlas failed to pay from the October 22 submission. 6 RR 79–81; 6 RR 5–7. Again, no payment was made. The Kainthlas' own construction expert, Victor Drozd, testified that Trident Homes was entitled to full payment of that amount, along with a 10% builder fee. 6 RR 219–20.

Trident Homes proved up builder fees totaling $19,425.22 that were earned but never paid. These included fees for work performed or ordered while Trident Homes was the builder—either by Trident Homes directly or by the Kainthlas acting unilaterally but using Trident Homes' vendors, timelines, or selections. *See also* 7 RR 171–74; 8 RR 145–50. The following table summarizes the unpaid builder fees by category, with citation support:

| | Builder Fee Owed to Trident Homes | Proof |
|---|---|---|
| Earthstone Colours | $287.91 | DX 22; 7 RR 73-79 |
| Old Stone Marble and Granite | $1,705.61 | DX 22; 7 RR 73-79 |
| Art's Fencing | $738.30 | DX 22; 7 RR 73-79 |
| Emser Tile | $509.37 | DX 22; 6 RR 15-16 |
| Frank Tello | $663.50 | DX 20; PX 90; 7 RR 94–95 |
| Additional Invoices Submitted to Kainthlas by Trident Homes | $3,733.48 | 7 RR 104–105; DX 22 |
| Subcontractors paid by Kainthlas outside of Trident Homes | $254.71 | 7 RR 104–105; DX 22 |
| Items purchased by Kainthlas outside of Trident Homes | $1,450.01 | 7 RR 96–97; DX 31 |
| Gutters | $925.00 | 7 RR 95–97 |
| Climate Doctors | $2,379.40 | 7 RR 96–97; DX 31 |
| Cabinets – Juan Tzunun | $62.50 | DX 22; 7 RR 95 |
| Audio Video | $1,949.91 | 5 RR 96–97 |
| Art's Fencing (additional work and invoice) | $1,455.00 | DX 22; 6 RR 8–16 |
| Factory Builders | $3,094.33 | DX 22; 6 RR 8–16 |
| **Total Builder Fee Owed to Trident Homes** | **$19,425.22** | |

This was not a case of disputed scope or defective work. Until late October 2020, the Kainthlas routinely paid Trident Homes' expense and builder fee requests without objection. 7 RR 67–70; 7 RR 175–76. There was no accounting dispute until they abruptly declined to pay the October 22 billing. From that point forward, the Kainthlas refused to pay not only for expenses but also for builder fees they were contractually obligated to pay. The jury confirmed the 10% builder fee obligation. CR 1039.

Because Trident Homes conclusively proved nonpayment of multiple billing packets and undisputed builder fees, the jury's "excuse" finding should not have barred Trident Homes' counterclaim. The district court erred in entering a take-nothing judgment on the counterclaim, and this Court should reverse and render judgment in Trident Homes' favor for the proven amount of $19,425.22. Each of the above categories and amounts are detailed below:

*Earthstone Colours*:

Ramesh resisted paying the Earthstone (aka Colours) invoices that were submitted to him on October 22, 2020, claiming that he had not received a copy of the invoices. 7 RR 58-61. However, he still did not pay those amounts once invoices were provided to him. 6=7 RR 16. Earth Stone Colours was paid $1,625.24 on

September 29, 2020, $11,075.72 on October 1, 2020, and $1,356.37 on October 6, 2020 by Trident Homes. 7 RR 93-95;DX 29; 7 RR 76-78. On November 6, 2020, Trident Homes emailed him a copy of the Earthstone invoice in the amount of $1,356.37. DX 244 at 1. Trident Homes paid this invoice in full on 10/06/2020. DX 29 at 3. Ramesh was also provided a copy of the Earthstone invoice in the amount of $1,522.68 that was paid by Trident Homes while it was the builder, but the Kainthlas did not pay the builder fee related to those amounts. 6 RR 16; 7 RR 76-78; 7 94. Trident Homes is owed a builder fee of *$287.91* related to these two Earthstone invoices.

*Old Stone Marble & Granite*:

The testimony and evidence showed that Old Stone Marble and Granite had performed work for months related to the work represented by their invoice in the amount of $18,714.04. 6 RR 15-16; 7 RR 80-85. DX 20-23. The Kainthlas refused to pay Trident Homes anything toward that invoice. 6 RR 15-16; 7 RR 80-85. On November 5, 2020, Trident Homes paid Old Stone Marble & Granite $10,000 towards the work performed. 6 RR 15-16; 7 RR 83-85. PX 90-45 (aka PX90-2020.11); DX 20. But Trident Homes was not reimbursed for this amount, nor was it paid a builder fee for that amount. 6 RR 15-16; 7 RR 80-85. The builder fee owed to Trident Homes on that amount is $1,000. DX 20. In addition, the granite was installed and

31

the total invoice amount was reduced to $17,056.14. 6 RR 15-16; 7 RR 80-85. Accordingly, Trident Homes is owed an additional builder fee of $705.61 on the total invoice amount that exceeded $10,000. 7 RR 80-83. The combined Builder Fee still owed to Trident Homes related to the Old Stone Marble & Granite invoice referenced in this section totals **$1,705.61**.

*Art's Fencing*:

Art's Fencing submitted Invoice 632 on October 9, 2020, in the amount of $5,871.00 for railings. *See also* DX 21; DX 23; 7 RR 93-95. The Kainthlas paid only half of that invoice on November 2, 2020, leaving the remaining $2,935.50 unpaid. *See id.*; *see also* 7 RR 100-104 (Impullitti testimony confirming shortfall). Art's Fencing also submitted Invoice 633 on October 16, 2020, in the amount of $8,895.00 for the spiral stairway. *See* DX 22 at 9; 6 RR 61. Again, the Kainthlas paid only half on November 2, 2020, leaving a balance due of $4,447.50. *See id.*; *see also* 7 RR 100-104. Art's Fencing completed its work related to both the railing and spiral stairway while Trident Homes was still serving as the builder. *See* 7 RR 93-95; 6 RR 61; 7 RR 100-104. Trident Homes is entitled to a builder fee in the amount of $738.30 on these two unpaid invoice balances. *See* DX 22 (Bill Tracker Spreadsheet); 7 RR 100-104 (Impullitti identifying fee shortfall on unpaid items).

32

*Emser Tile*:

On October 13, 2020, Trident Homes paid Emser Tile for an invoice in the amount of $7,389.83.7 RR 93-95; DX 29 at 4. This payment is corroborated by DX 29, which shows the invoice detail, and was also testified to by Jason Impulliti. *See* 7 RR 93–95. Emser Tile later issued a credit in the amount of $2,296.09. *See id.*;. Trident Homes was not reimbursed for the net amount it paid to Emser Tile ($5,093.74), nor was Trident Homes paid the associated 10% builder fee in the amount of $509.37. *See* 7 RR 93–95; 6 RR 8, 61; 8 RR 8-9; *see also* DX 22 (Bill Tracker Spreadsheet reflecting this shortfall). Jason Impullitti confirmed that these amounts remained outstanding as of the termination of the project. *See* 7 RR 100-104.

*Additional Work While Trident Homes was the builder:*

On November 20, 2020, Trident Homes submitted a payment request in the amount of $85,245.68 for work completed while Trident Homes was serving as the builder. *see* DX 22 (Bill Tracker Spreadsheet at p. 10); 5 RR 93–95 (Strickland testimony explaining invoice submission and payment requests); 7 RR 100-104 (Impullitti testimony confirming outstanding payment requests). These were amounts invoiced to Trident Homes by subcontractors and vendors during Trident Homes' tenure on the project, compiled and submitted for reimbursement to the Kainthlas, but not paid. *See id.* Victor Drozd, the Kainthlas' own construction

expert, testified that these amounts should have been paid to Trident Homes along with a 10% builder fee. *See* 4 RR 222–23 (Drozd testimony agreeing that builder is entitled to fee on approved and completed work); *see also* 8 RR 144-149 (Strickland testimony identifying builder fee earned but unpaid).

*Trident Homes' payment to Frank Tello*:

Frank Tello submitted an invoice in the amount of $6,635.00 for work that was completed while Trident Homes was still serving as the builder. *See also* DX 20 (Tello invoice); 5 RR 93–95 (Strickland testimony confirming vendor work during Trident Homes' tenure). Trident Homes paid Tello $6,635.00 on November 5, 2020, by check number 1245. *See* PX 90 2020.11 (Prosperity Bank Statement, check detail); *see also* DX 20 (corresponding invoice); 5 RR 94; 6 RR 61 (Strickland identifying payment); 7 RR 100-104 (Impullitti confirming the payment from construction account). The Kainthlas never reimbursed Trident Homes for that payment, nor did they pay the associated builder fee in the amount of $663.50. *See* DX 22 (Bill Tracker Spreadsheet showing non-payment and omitted builder fee); 5 RR 95; 7 RR 100-104 (Impullitti testimony confirming the shortfall in both principal and fee).

*Trident Homes' payment to Cast Fireplaces*:

Cast Fireplaces submitted an invoice in the amount of $1,900.00 for work performed while Trident Homes was still serving as the builder. *See* DX 30 at 2 (invoice entry); 5 RR 95–96 (Impullitti testimony confirming the vendor, amount, and project timing). Trident Homes paid that invoice on October 20, 2020. *See also id.*; *see also* 7 RR 100-104 (Impullitti identifying the payment as part of outstanding reimbursement request). Trident Homes subsequently requested reimbursement from the Kainthlas, along with the associated 10% builder fee of $190.00, but the Kainthlas failed to pay either amount. *See* DX 22 (Bill Tracker Spreadsheet showing unpaid reimbursement and fee); 5 RR 95–96; 6 RR 61; 7 RR 100-104 (Impullitti confirming that both the principal and the fee remained unpaid).

*Additional builder fees owed to Trident Homes for submitted amounts*:

Trident Homes is owed additional builder fees in the amount of $3,733.48, based on unpaid invoice amounts totaling $37,334.78. This amount excludes the builder fees already discussed above for invoices originally submitted with Trident Homes' October 22, 2020 billing packet, and it includes a deduction for the $5,865.55 builder fee that the Kainthlas did pay on November 2, 2020, related to a portion of the October 22 submissions. *See* DX 22 (Bill Tracker Spreadsheet); 7 RR

35

73–79 (Impullitti testimony describing amounts submitted, partially paid, and the corresponding fee shortfall).

The original October 22, 2020 billing packet from Trident Homes to the Kainthlas requested reimbursement of $95,021.38. Ramesh Kainthla did not pay that full amount—he paid only $58,655.46—leaving a remaining unpaid balance of $36,365.92. *See* 7 RR 73–79; DX 21, 22, 23. The Kainthlas never paid the remaining balance or the full builder fee due on that amount. *Id.*

The next billing packet, submitted by Trident Homes on November 20, 2020, requested payment of $85,245.68. The Kainthlas made no payment toward that amount and did not pay any corresponding builder fee. *See* 7 RR 79:6–21 (Impullitti confirming zero payment and outstanding fee). Subsequent entries and late-arriving invoices caused the November 20 billing cycle amount to be revised upward to $111,709.28. *See* 7 RR 85–86 (Impullitti explaining adjustment based on additional invoices received post-submission); DX 22 (updated Bill Tracker reflecting revised total).

Trident Homes' Bill Tracker spreadsheet used visual highlights to denote whether an invoice had been paid (highlighted) or remained unpaid (not highlighted). As Impullitti explained, the total amount of invoices that were paid from the November 20, 2020 billing cycle exceeded the amount that remained

36

unpaid from the October 22, 2020 cycle. *See* 7 RR 79–80; DX 22 (highlighting protocol and tracked invoice status).

<u>*Subcontractors paid by Kainthlas outside of Trident Homes*</u>:

Trident Homes is owed builder fees of at least $254.71, representing 10% of the $2,547.07 that the Kainthlas paid directly to subcontractors or suppliers without remitting the corresponding builder fee to Trident Homes. *See* DX 22 (Bill Tracker Spreadsheet); 7 RR 100-104 (Impullitti testimony confirming unpaid fees on owner-paid invoices). This amount relates to two invoices from Tim Bailey Plumbing: one from June 2020 in the amount of $2,200.00, and another from October 2020 in the amount of $347.07. *See* PX 83, PX 85 (plumbing invoices and supporting documentation); 7 RR 100–101; 8 RR 148-149 (Impulliti testimony establishing dates, amounts, and Trident Homes' role as general contractor during the time of service). The plumbing work was performed while Trident Homes was actively serving as the builder, but the Kainthlas bypassed Trident Homes by paying the vendors directly and never paid Trident Homes the applicable builder fee. *See* 7 RR 99–101; 6 RR 8; 7 RR 100-104.

*Items purchased by Kainthlas outside of Trident Homes*:

In 2020, as relations between the parties deteriorated, the Kainthlas breached the parties' agreement by purchasing materials and fixtures for the home directly from suppliers—deliberately bypassing Trident Homes to avoid paying the contractually agreed builder fee. While Trident Homes was still serving as the builder, the Kainthlas circumvented it by making direct purchases for the project totaling at least $14,500.07, then failed to provide Trident Homes with the corresponding invoices or receipts. *See* 5 RR 96–97 (Impullitti testimony describing Kainthlas' refusal to disclose); DX 31 at 2 (email from Trident Homes requesting documentation for owner-purchased items). The 10% builder fee owed for these purchases is $1,450.01. *See* 7 RR 97 (Impullitti calculating fee on undisclosed purchases); 7 RR 100-104 (Impullitti confirming outstanding fees from owner-purchased items); 8 RR 145-149.

On October 20, 2020, Trident Homes sent an email to the Kainthlas specifically requesting a list of all items purchased independently, along with related receipts. *See* DX 31 at 2. The list included a tub, ceiling fans, an ironing board, outdoor kitchen components, plumbing fixtures, electrical fixtures, and sinks—many of which had already been installed or were being installed that week. *Id.*; *see also* 7 RR 96–97. The Kainthlas refused to provide receipts or amounts for these

items and declined to pay the corresponding builder fee. *See id.*; 6 RR 8–9; 7 RR 100-104. Ramesh Kainthla admitted at trial that many of these purchases occurred in August, September, and October of 2020—while Trident Homes remained on the project and continued to act as the general contractor. *See* 5 RR 200-2047 RR 93–95; 8 RR 8–9 (Strickland testimony confirming timeline and builder role); 7 RR 100-104 (Impullitti describing unpaid builder fee on these owner-directed transactions).

*Additional builder fees earned while Trident Homes was the builder*:

Trident Homes is owed at least $9,892.34 in builder fees associated with materials and selections totaling $98,923.38 that were purchased by the Kainthlas while Trident Homes was still serving as the builder. These amounts were paid directly by the Kainthlas to subcontractors or suppliers without paying the contractually agreed 10% builder fee to Trident Homes. *See* DX 22 (Bill Tracker Spreadsheet, summary of owner-directed purchases); 7 RR 93–97; 6 RR 8–9 (Strickland testimony confirming that Trident Homes was still the builder during the relevant purchases); 7 RR 100-104 (Impullitti testimony confirming amounts and unpaid fees). The components of this unpaid builder fee are as follows:

- Gutters: Trident Homes is owed a builder fee of $925.00 on a $9,250.00 invoice for gutter work performed and completed during the summer of 2020 while Trident Homes was the builder. Although the invoice was not submitted until

January 2021, the installation occurred under Trident Homes' supervision. *See* 7 RR 95–97 (Strickland and Impullitti testimony); DX 22 at summary lines dated Summer 2020.

- Climate Doctors: Trident Homes is owed a builder fee of $2,379.40 on a $23,794.00 installation coordinated while Trident Homes was the builder. Strickland personally scheduled the work and participated in calls with the Climate Doctors technician at Neetu Kainthla's request, even though the invoice was submitted post-termination. *See* 7 RR 95–97; 6 RR 8–9 (Strickland confirming coordination role); DX 22.

- Cabinets (Juan Tzunun): Trident Homes is owed a builder fee of $62.00 on two payments totaling $620.00 for cabinet work ordered in early November 2020, while Trident Homes remained on the project. *See* 7 RR 95; 7 RR 100-104; DX 22 (entries for $400 and $220).

- Audio Video: Trident Homes is owed a builder fee of $1,949.91 on $19,499.05 worth of items ordered from Audio Video during Trident Homes' tenure as builder. Trident Homes coordinated the selection and installation while still managing the project. *See* 7 RR 96–97; 6 RR 8–9 (Strickland testimony); DX 22.

- Art's Fencing: Trident Homes is owed a builder fee of $1,455.00 on $14,550.00 worth of fencing work ordered and scheduled with Art's Fencing in early

November 2020. Trident Homes arranged the work before its formal termination. *See* DX 22; 6 RR 8–9 (Strickland identifying timeline and vendor coordination); 7 RR 100-104.

- Factory Builder Stores: Trident Homes is owed a builder fee of $3,094.33 on $30,943.30 of selections ordered through Factory Builder Stores while Trident Homes was still the active general contractor. *See* DX 22 (Factory Builder line entries); 6 RR 8–9; 7 RR 100-104 (testimony confirming Trident Homes' involvement and the absence of fee payment).

Taken together, these items conclusively establish both the Kainthlas' breach of the builder agreement and the amount of unpaid builder fees owed to Trident Homes. *See* 7 RR 93–97; 6 RR 8–9; 7 RR 100-104. In the alternative, the great weight and preponderance of the evidence supports Trident Homes' claim for recovery on these amounts.

### B. The Kainthlas' breaches were not excused.

As stated above, the jury answered "No – By Excusal" to Question No. 5, which asked whether the Kainthlas failed to comply with the agreement. CR 1044. Trident Homes challenges this finding on multiple grounds: (1) it is incorrect as a matter of law, (2) it is not supported by legally and factually sufficient evidence, (3) the evidence conclusively established that excuse does not apply, and (4) the finding is against the

41

great weight and preponderance of the evidence. The instruction accompanying Question No. 5 provided that "[a] failure to comply by the Kainthlas is excused if the Builder previously failed to comply with a material obligation of the same agreement." CR 1044. Thus, for the jury to excuse the Kainthlas' nonperformance, it had to find that Trident Homes committed a prior material breach of contract.

No evidence supports such a finding. First, the record contains no evidence of any material breach by Trident Homes before the Kainthlas' own breaches in October and early November 2020—namely, their failure to pay the full October 22, 2020 billing packet ($95,021.38) and refusal to pay the November 20, 2020 billing cycle ($85,245.68). *See* 7 RR 73–79 (Impullitti testimony confirming underpayment on October 22 packet); 7 RR 79 (no payment made on November 20 packet); DX 22 (Bill Tracker Spreadsheet reflecting unpaid balances).

Second, the earliest plausible basis for any material breach by Trident Homes arises after these events—in mid-to-late November 2020—when the Kainthlas began refusing to provide receipts for their unilateral purchases and demanding a $10,000 refrigerator credit, while Trident Homes had not yet been terminated. *See* 7 RR 96–97 (Impullitti testimony re: October 20 email requesting receipts and builder fees); 8 RR 119-128 (Strickland testimony re: final breakdown of relationship).

Third, the BMC lien threat that the Kainthlas complained about was dated November 12, 2020, after their October 22 underpayment. *See* PX 100 (BMC letter); 6 RR 134-136 (Strickland testimony); 6 RR 61–62. There is no evidence that this vendor letter—or Trident Homes' handling of it—constituted a material breach, especially given that the Kainthlas had already defaulted on payment obligations. *See* 5 RR 73–75; 7 RR 100-104.

Fourth, the only four breaches the jury ultimately found and awarded damages for were:

- $13,538.05 for funds transferred from the construction account beginning in February 2021 (months after Trident Homes was off the job). CR 1043; *see* 8 RR 144-149 (Strickland testimony).

- $3,802.23 for alleged "double payments" made after the November 12 BMC lien letter. CR 1043; *see* 5 RR 217; 6 RR 24-28 (Ramesh Kainthla acknowledging payments occurred only once).

- $10,000 for a refrigerator credit tied to an early oral agreement, but not demanded in earnest until after relations had already broken down. CR 1043; *see* 8 RR 122; DX 31.

- $1,300 for roof tile repairs initiated in 2021, long after Trident Homes ceased serving as builder. CR 1043; *see* PX 70 at 2; 8 RR 32–34 (Strickland

43

testifying that damage occurred post-departure and was not caused by Trident).

None of these breaches preceded the Kainthlas' nonpayment in October 2020. The jury made no finding—and the record contains no competent evidence—of any material breach by Trident Homes that occurred prior to the Kainthlas' underpayments. *See* CR 1043–1044; *see also* 5 RR 93–97; 6 RR 8–9; 7 RR 100-104.

Thus, the jury's "excusal" finding is unsupported as a matter of law and should be disregarded. In the alternative, even if the record contained any evidence of a potential material breach by Trident, the jury's implied finding that such a breach preceded the Kainthlas' own failure to pay is against the great weight and preponderance of the evidence.

As of November 2020, after Trident Homes refused to pay for a refrigerator, the Kainthlas faced a choice: they could treat that refusal as a material breach and terminate the construction contract, or they could elect to continue under the agreement. *See, e.g.*, *Bartush-Schnitzius Foods Co. v. Cimco Refrigeration, Inc.*, 518 S.W.3d 432, 437 (Tex. 2017). But even assuming a material breach occurred at that point, it could only excuse future performance—not obligations that had already accrued. *Id.* ("A material breach excuses future performance, not past

44

performance."). Accordingly, any builder fees owed for work performed and invoiced before the alleged breach remain contractually due.

The jury's improper finding of "excuse" foreclosed recovery on Trident Homes' counterclaim, despite undisputed evidence of unpaid builder fees. Because of this threshold error, the jury never reached Question 6—the damages question for Trident Homes' counterclaim—and Trident Homes was also denied the opportunity to recover its attorneys' fees under Chapter 38. The judgment that resulted awarded the Kainthlas over $270,000 in damages while awarding Trident Homes nothing for its work over a multi-year project. That outcome is not supported by law or the evidence and should be reversed.

## IV. The fee award cannot stand.

Finally, Appellants challenge the district court's decision to both award the Plaintiffs attorney's fees of $233,769.83 for trial and ~$70,000 for appeal and deny the Appellants their fees. CR 1219-20. This issue warrants relief no matter how the prior issues pan out.

First, if the Court agrees with the Appellants as to Issue I (by holding that Strickland cannot be liable for breach of contract), the Court should at least hold that the district court errantly awarded attorney's fees against Strickland as well. In this respect, the correct remedy is to render out the fee award against Strickland.

45

Second, if the Court agrees with the Appellants as to Issue II (by holding that the Plaintiffs did not prove most of their damages), the Court should vacate the current fee award and order the district court to make a new determination of what fee is "reasonable and necessary" in light of the new "results obtained." *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 493 (Tex. 2019).

Third, if the Court has agreed with the Appellants as to Issue III (by upholding Trident Homes' counterclaim against the Plaintiffs), the Court should again vacate the current fee award and order the district court to determine what fee is "reasonable and necessary" for the new prevailing party, Trident.

Finally, even if the Court disagrees with the Appellants on any prior issue, the district court's existing fee award cannot stand for three reasons.

### A. The demand was unreasonable.

To recover attorney's fees on a breach of contract claim under Texas law, a party must satisfy the presentment requirement of Chapter 38—namely, making a demand that affords the opposing party a 30-day opportunity to pay the claim without incurring liability for fees. *See* Tex. Civ. Prac. & Rem. Code § 38.002(2). But where the demand is excessive or unreasonable, the fee claim fails. *Wayne v. A.V.A. Vending, Inc.*, 52 S.W.3d 412, 418 (Tex. App.—Corpus Christi–Edinburg 2001, pet.

denied). The doctrine exists to prevent claimants from using inflated demands to trigger fee exposure untethered to the actual value of the claim. *Id.*

Here, the Kainthlas never made a reasonable demand. Their pre-suit letter—Defendants' Exhibit 360—demanded that Trident Homes pay $95,955.46 to avoid litigation. That figure is nearly four times the amount the jury ultimately awarded ($28,640.28), and it was directly contradicted by the Plaintiffs' own trial testimony. Plaintiff Ramesh Kainthla conceded under oath that the $95,955.46 demand was "not reasonable":

> Q.    I'm showing you again -- I'm showing you again
> what's marked as D360.  And, again, this is the demand
> letter that was sent on -- sent on your behalf to -- to
> the defendants in this case, correct?
> A.    Yes, sir.
> Q.    And, again, on November 20th --
> A.    Yes, sir.
> Q.    -- Trident Homes had already sent you the
> running billing sheet in an Excel format and showed you
> which invoices they had paid, correct?
> A.    Yes, sir.
> Q.    And you were aware that Trident Homes had -- at
> the time, as of December -- December 11th, 2020, you were
> aware that Trident Homes only had just over $13,000 in
> their checking account, correct?
> A.    Yes, sir.

```
Q.      And yet you're still saying that Trident Homes
had over 88,755 thousand dollars [sic] of your money,
correct?
A.      Yes, sir.
Q.      And you're demanding that they pay that to you?
A.      Yes, sir.
Q.      And that's not reasonable, is it?  At that time,
```

```
that was not reasonable, was it?
A.      No, it wasn't.
        MR. SHARPE:  We'll pass the witness.
```

6 RR 80-81.

No evidence at trial supported the demanded amount as a good-faith estimate of contractual damages; indeed, Plaintiffs failed to prevail on the vast majority of their claims and theories.  So as the Wayne court held, "[i]f a claimant demands monies to which he is not entitled, that demand is unreasonable and consequently excessive." 52 S.W.3d at 418.  That standard is met here as a matter of law. Because the Kainthlas' pre-suit demand was objectively excessive, the district court should have denied their claim for attorney's fees in its entirety.

**B.    The amount is excessive.**

Independent of the excessive-demand bar, the district court's attorney's fee award must be reversed because it is not supported by legally or factually sufficient evidence. Plaintiffs tried their claim for attorney's fees to the bench by agreement. Immediately prior to the post-verdict hearing, Plaintiffs submitted a fee affidavit (Exhibit T) and offered attorney Sean Hester for cross-examination. That limited presentation was the entirety of their proof. Nonetheless, the court awarded the exact amount requested—without any reduction, lodestar adjustment, or consideration of prevailing-party principles. The award is not merely generous; it is legally erroneous under governing standards.

Texas courts gauge fee awards with the "lodestar method." *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 498 (Tex. 2019). The court must first determine (1) the number of reasonable hours expended and (2) a reasonable hourly rate. *Id.* The product of those two figures forms the base lodestar. *Id.* From there, the court may adjust the lodestar—up or down—based on specific factors, with the most important factor being the result obtained. *Id.*

Courts consistently emphasize that the most important lodestar adjustment factor is proportionality. The fee must bear a rational relationship to the degree of success achieved. *Drummond v. WWW.URBAN.INC.*, 508 S.W.3d 657, 666 (Tex.

App.—Houston [1st Dist.] 2016, no pet.). Even when a party technically prevails, "[t]he ultimate question is who was vindicated by the judgment." *Id.* Here, the answer is not the Plaintiffs.

After a four-year lawsuit and extensive discovery, Plaintiffs recovered just $28,640.28—a fraction of the $250,000 to $1,000,000 range they sought in their live pleading. *See* CR 509–525 (Fourth Amended Petition); CR 1219 (Final Judgment). The jury rejected nearly every claim they advanced—both factually and legally. The table below summarizes Plaintiffs' causes of action and trial outcomes:

| Claims asserted by Plaintiffs | Damages sought by plaintiff | Did Plaintiffs prevail? |
|---|---|---|
| Delay damages | Unspecified | NO |
| 10(a) Crushed culvert | $2,200 | NO |
| 10(b) Ice and water shield | $14,620 | NO |
| 10(c) Mold on framing | $1,600 | NO |
| 10(d) Kitchen island floor plugs | $826 | NO |
| 10(e) Relocation of soffit lights | $12,700 | NO |
| 10(f) Electrical issues | $48,785,61[2] | NO |
| 10(g) Lease of generator | $295.30 | NO |
| 10(h) Repainting ceiling | $4,500 | NO |
| 10(i) Damaged plumbing line | $742.50 | NO |
| 10(j) Vegetable sink plumbing | $550 | NO |
| 10(k) Relocation of bathtub | $512 | NO |
| 10(l) Water leak | $2,005.67 | NO |
| 10(m) Water line under driveway | $2,200 | NO |

[2] In their Fourth Amended Petition, Plaintiffs sought "more than $50,000" related to electrical and they adjusted that amount to $48,785.61 in their damages model. DX 390 (Plaintiff's were seeking $319,763.76 as of 08/08/2022)

| | | |
|---|---|---|
| 10(n) Master bath drain relocation | $347 | NO |
| Roof overhangs | Unspecified | NO |
| Breach of contract | Unspecified | YES |
| Negligence | Unspecified | NO |
| Common law fraud | Unspecified | NO |
| Statutory fraud | Unspecified | NO |
| DTPA Section 17.46(a) – Allegation that Defendants "represented that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he does not" | Unspecified | NO |
| DTPA Section 17.46(a) – allegation that Defendants "represented that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another" | Unspecified | NO |
| DTPA Section 17.46(a) – allegation that Defendants "failed to disclose information about goods or services that was known at the time." | Unspecified | NO |
| DTPA Section 17.46(a) – allegation of Defendants "representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law." | Unspecified | NO |

51

| | | |
|---|---|---|
| DTPA Section 17.46(a) – allegation of Defendants "knowingly making false or misleading statements of fact concerning the need for parts, replacement, or repair service." | Unspecified | NO |
| DTPA Section 17.46(a) – allegation that Defendants "breached various warranties as described herein." | Unspecified | NO |
| Request for enhanced damages for knowing violation of DTPA Section 17.46(a) | Unspecified | NO |
| DTPA unconscionability | Unspecified | YES |
| Request for enhanced damages for knowing violation of DTPA unconscionability. | Unspecified | NO DAMAGES AWARDED |
| Demand for Accounting | No action taken by Plaintiffs | NO |
| Breach of Fiduciary duty | Unspecified | NO |
| Money had and received | Unspecified | YES |
| Construction trust fund claim against Trident Homes | Unspecified | NO |
| Construction trust fund claim against S&I Residential | Unspecified | NO |
| Construction trust fund claim against Ryan Strickland | Unspecified | NO DAMAGES AWARDED |
| Alter ego claim against Ryan Strickland | Unspecified | NO |
| Piercing the corporate veil | Unspecified | NO |
| Mental anguish | Unspecified | NO |
| Insurance costs (not in pleading but in damages model) | $20,689.50 | NO |
| Interest on home equity loan (not in pleading but in damages model) | $22,810.48 | NO |

| Property taxes (not in pleading but in damages model) | $22,786.29 | NO |
|---|---|---|
| Punitive damages | Unspecified | NO |

Ultimately, the Plaintiffs were awarded only 2% to 11% of the damages they pleaded. CR 1219.

This kind of disproportionate fee award is precisely what *Rohrmoos* and *Intercontinental Group P'ship v. KB Home Lone Star L.P.*, 295 S.W.3d 650 (Tex. 2009), prohibit. As the *KB Home* court explained, "[r]ecovery of attorney's fees … should be grounded in the amount involved in the controversy and the results obtained." *Id.* at 655. Here, Plaintiffs sought up to $1 million and recovered just $28,640.28. That is not "the stuff of which legal victories are made." *Id.*

Accordingly, the fee award should be reversed entirely or, at minimum, remitted to an amount proportionate to Plaintiffs' limited success.

## C. Plaintiffs failed to segregate.

Even apart from its disproportionality, the district court's attorney's fee award should be reversed because Plaintiffs failed to meet their burden to segregate recoverable from unrecoverable fees. It is well-established that a fee claimant "must segregate legal fees accrued for those claims for which attorneys fees are recoverable from those that are not." *Kinsel v. Lindsey*, 526 S.W.3d 411, 427 (Tex. 2017). "An exception exists only when the fees are based on claims arising out of the same

transaction that are so intertwined and inseparable as to make segregation impossible." *Id.* But even then, "it is only when discrete legal services advance both a recoverable and unrecoverable claim that they are so intertwined that they need not be segregated." *Id.*

Here, segregation was clearly required. Plaintiffs brought a wide array of legal theories—many of which do not permit recovery of attorney's fees—including tort, fraud, DTPA, trust fund, and equitable claims. Yet Plaintiffs made no meaningful attempt to separate time spent on those theories from time spent on their core (and only successful) contract claim.

The burden to prove segregation lies squarely with the claimant. *See, e.g.*, *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 11–12 (Tex. 1991). This requires competent evidence—not conclusory assertions. But at the October 28, 2024 hearing, 12 RR, Plaintiffs offered no competent proof of segregation. In his affidavit (Exhibit T), attorney Sean Hester simply stated that the claims "were inextricably intertwined" and reduced the fee request by only 5%. The affidavit gave no explanation for why that figure was appropriate or how it was calculated. His statement that "I believe this fairly and accurately reflects the work actually performed on the causes of action that allow recovery of attorneys' fees" is conclusory and does not satisfy the standard. *See also Rohrmoos*, 578 S.W.3d at 503–

04 (requiring evidence of specific tasks performed and their relation to recoverable claims).

By contrast, Defendants' counsel testified—based on firsthand knowledge of the case and billing records—that only 15–20% of Plaintiffs' fees related to the breach-of-contract claim. 12 RR 114–16. That testimony is consistent with the trial record: the only damages awarded for breach of contract were limited to four narrow items—(1) post-project withdrawals from the construction account, (2) alleged "double payments," (3) $1,300 for roof tile repairs, and (4) a $10,000 refrigerator credit. *See* CR 1043. These issues were minor in scope and did not require protracted litigation.

In contrast, the overwhelming majority of the case was devoted to claims on which Plaintiffs did not prevail—including a laundry list of construction defects, delay theories, tort claims, and fraud. A substantial portion of trial was spent on failed theories, including extensive testimony and discovery regarding Justin Kerl and University Electric—issues tied solely to the rejected delay claims. The jury rejected virtually all of Plaintiffs' claims other than their narrow accounting theory. The minimal success Plaintiffs achieved could have been addressed in a one-day bench trial, yet the litigation spanned four years, multiple amended petitions, and extensive pretrial discovery.

Plaintiffs' own fee invoices, attached to their affidavit (Exhibit T), show a heavy focus on discovery, depositions, and motion practice relating to claims for which fees are not recoverable. There is no evidence that this time was reasonably necessary to prosecute the contract claim. *See also Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 311–13 (Tex. 2006) (fees must be segregated where claims are not so interwoven as to be inseparable, and segregation is "not difficult in most cases").

Because Plaintiffs failed to segregate recoverable fees from unrecoverable ones—and offered no competent evidence supporting their 5% allocation—the award must be reversed. At minimum, the case should be remanded for the trial court to reconsider the fee award in accordance with *Rohrmoos* and *Tony Gullo.*

## Conclusion

The district court's judgment should be reversed.

For issue I, the Court should either render a judgment that the Plaintiffs take nothing on their claims against Ryan Strickland or, alternatively, order a new trial.

For issue II, the Court should either render a judgment eliminating the Plaintiffs' recovery for the damages represented by Question 2's first, second, and fourth damage findings or, alternatively, order a new trial.

For issue III, the Court should either render a judgment upholding Trident Homes' breach-of-contract counterclaim against Plaintiffs or, alternatively, order a new trial.

For issue IV, if the Court has awarded all of the previously-requested relief, it should render out the fee award against Strickland and order a new fee determination for whomever is the prevailing party in light of the new results obtained. Alternatively, even if no other relief is ordered, the Court should render a judgment that the Plaintiffs' take nothing in attorney's fees or, in the alternative, suggest a remittitur.

Respectfully submitted,

Chad Flores
Texas Bar No. 24059759
cf@chadflores.law
Flores Law PLLC
917 Franklin Street, Suite 600
Houston, Texas 77002
(713) 364-6640

/s/ Matthew D. Sharpe
Matthew D. Sharpe
Texas Bar No. 24067160
matt.sharpe@lonestarlawoffice.com
Sharpe Law, PC
416 Tarrow St
College Station, Texas 77840
(832) 416-1133

/s/ Mark Hellinger
Mark Hellinger
Texas Bar. No. 09394975
mhellinger@hellingerlawfirm.com
The Hellinger Law Firm
12 Greenway Plaza, Suite 1100
Houston, TX 77046-1201
(713) 623-1152

Counsel for Appellants

**Certificate of Compliance**

This document contains 11,808 words counted in accordance with the Texas Rules of Appellate Procedure.

*/s/ Chad Flores*
                   
Chad Flores

**Certificate of Service**

A true and correct copy of this submission was electronically filed and served on all counsel listed below. *See* Tex. R. App. P. 9.2(c)(1), 9.5(b)(1).

J. Davis Watson
Sean Hester
Watson Law Firm
1450 Copperfield Pkwy, Suite 300
College Station, Texas 77845
(979) 703-4044

*/s/ Chad Flores*
                   
Chad Flores

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Charles Flores on behalf of Charles Flores
Bar No. 24059759
cf@chadflores.law
Envelope ID: 105180119
Filing Code Description: Brief Not Requesting Oral Argument
Filing Description: Brief of Appellants
Status as of 9/4/2025 7:36 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Matthew D.Sharpe | | matt.sharpe@lonestarlawoffice.com | 9/4/2025 7:28:09 AM | SENT |
| Charles Flores | | cf@chadflores.law | 9/4/2025 7:28:09 AM | SENT |
| Charles Flores | | cf@chadflores.law | 9/4/2025 7:28:09 AM | SENT |
| J. Davis Watson | | dwatson@watsonlawyers.com | 9/4/2025 7:28:09 AM | SENT |
| Sean Hester | | shester@watsonlawyers.com | 9/4/2025 7:28:09 AM | SENT |